

**PRIEST MOMOLU V.S. SIRLEAF, JR.,**

> Plaintiff,

v.                                                         Civil Action No. **3:18CV311**

**HAROLD W. CLARKE, *et al.,***

> Defendants.

## <u>MEMORANDUM OPINION</u>

Priest Momolu V.S. Sirleaf, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action, raising seven claims stemming from his religious practices while incarcerated.[1] The matter proceeds on Sirleaf's Particularized Complaint ("Complaint," ECF No. 14).[2] Sirleaf names as Defendants: Harold W. Clarke, Director, Virginia Department of Corrections ("VDOC"); David Robinson, Chief of Corrections Operations, VDOC; Eddie Pearson, Warden, Greensville Correctional Center ("GCC"); Cynthia Putney, Assistant Warden, GCC; Louise Goode, Assistant Warden, GCC; Mark Engelke,[3]

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, spacing, and spelling in the quotations from Sirleaf's submissions.

[3] In Sirleaf's Complaint, he identifies Defendant Engelke as "Mark Engleke." (Compl. 2.) However, in Defendants' Motion to Dismiss, Defendants indicate that the correct

Director of Food Services, GCC; and, Chaplain Hollenbaugh, Chaplain, GCC, (collectively "Defendants").[4]

Defendants have moved to dismiss this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (the "Motion to Dismiss") (ECF No. 22). Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),[5] and an extension of time, Sirleaf has not responded to Defendants' Motion to Dismiss. For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART the Motion to Dismiss. (ECF No. 22.).

## I. Standard of Review

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims

---

spelling of this Defendant's last name is "Engelke." (ECF No. 22, at 1.) The Court corrects the spelling of Defendant Engelke's last name in Sirleaf's Complaint.

[4] In Sirleaf's original Complaint, he named D.Y. Kinsley as a Defendant. (*See, e.g.*, ECF No. 1, at 1.) However, in the instant Complaint, Sirleaf states: "Please Note!: Mrs. D.Y. Kinsley is no longer a Defendant in this action." (Compl. 2.) The Court notes that although in one portion of the instant Complaint, Sirleaf indicates that he seeks declaratory relief with respect to Defendant Kinsley, (*id.* ¶ 152), Defendant Kinsley is not named in the body of Sirleaf's Complaint and Sirleaf alleges no facts against her. *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("[If] a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his [or her] name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." (citation omitted)). Accordingly, Defendant Kinsley and Sirleaf's claims against her will be DISMISSED WITHOUT PREJUDICE.

[5] Defendants included with the Motion to Dismiss a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). (ECF No. 24.) The Roseboro Notice informed Sirleaf that he had twenty-one (21) days to respond to the Motion to Dismiss, and that failure to respond could result in dismissal of his claims.

where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quoting Fed. R. Civ. P. 8(a)(2);

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his or her complaint, *see Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Factual Background

Sirleaf's Complaint is lengthy, repetitive, and conclusory, and it is hardly a model of clarity. Because Sirleaf proceeds *pro se*, the Court liberally construes Sirleaf to raise seven claims based on Defendants' allegedly discriminatory conduct.

To begin, Sirleaf claims that he "is a Liberian national, with permanent resident alien status," (Compl. ¶ 1), and during the time period relevant to this suit, Sirleaf was incarcerated at GCC. (*See id.* ¶ 7.) Sirleaf states that he "is a priest and co-founder of the Yahvist sect called the Commonwealth of Israel," (*id.* ¶ 5). He avers that "[t]he House of Yahveh is on the approved religion list, and the Yahvists are a legitimate religion." (*Id.* ¶ 4.) Sirleaf alleges that he "qualifies for and is serving as the coordinator for the VDOC's House of Yahveh religious program." (*Id.* ¶ 3.) He also states that he "zealously holds to the major tenets of his religion, which are his sincerely held religious beliefs." (*Id.* ¶ 6.) Sirleaf filed the instant complaint

4

alleging that Defendants discriminated against him based on his disability and that Defendants

denied him his rights to practice his religion.

### A.    Sirleaf Alleges That Defendants Impermissibly Conspired and Retaliated Against Him

Sirleaf alleges that Defendants conspired to burden his religious practices to retaliate

against him for prior lawsuits that he filed. Sirleaf avers that the House of Yahveh was

historically granted rights at GCC, which he alleges were taken away after he filed a prior

lawsuit against Defendants. Specifically, Sirleaf alleges that "the House of Yahveh had been

observing Hanukkah, Purim, Tish B'Av, and the Fast of Esther at GCC prior to 2015 – i.e., prior

to Sirleaf the Priest's lawsuits against the Defendants." (*Id.* ¶ 42.) Sirleaf contends that one of

his lawsuits, which he filed on August 31, 2017 in this Court, "(#3:17CV539)," involved a

similar "retaliation claim . . . against some of these above-named Defendants." (*Id.* ¶ 9.) Sirleaf

states that he filed other lawsuits in this Court in 2015. (*See id.* ¶ 45.)

Sirleaf avers that

> [a]fter [he] exercised his right to petition the government for a redress of his grievances against the Defendants, these Defendants conspired to, and did, deprive Sirleaf the Priest and the House of Yahveh religious program of their civil rights secured under the First Amendment . . . via excluding [various] religious exercises from O.P. 841.3,[6] so that Sirleaf the Priest and the House of Yahveh would be punished for petitioning the government for a redress of their grievances.

(*Id.* ¶ 43.) Additionally, Sirleaf alleges that Defendants "conspired to refuse, continue to refuse,

and thereby deprive Sirleaf the Priest (and the House of Yahveh) of the [following] religious

exercises they had petitioned the Government to redress their being denied in the first place":

> [(i)] their inability to eat a Kosher diet per their religious scruples; . . . (ii) not accommodating the House of Yahveh with the ecumenical services required by

---

[6] O.P. 841.3 provides the VDOC's policies and procedures for offender religious programs. *See, e.g., Johnson v. Dir. VDOC*, No. 7:12–cv–00152, 2012 WL 6082906, at \*1 (W.D. Va. Dec. 6, 2012). O.P. 841.3 also includes an attached master religious calendar that sets forth various religious holy days. (*See* ECF No. 14–2.)

their sincerely held religious beliefs while providing the same for the religious programs of the Arabic and European/Western religious programs at the prison; [and,] (iii) not accommodating the House of Yahveh religious program with their sincerely held religious belief of the religious exercises of observing the Birth and Coronation Days of Emperor Haille Selassie I.

(*Id.* ¶ 44). Further, Sirleaf claims that "Defendants conspired to retaliate against [him] . . . [by] discriminating against the stewardship of Sirleaf the Priest as a coordinator, who qualifies, and has a record of being disabled" and refused to provide Sirleaf "with the reasonable accommodations, necessary and requested, for his essential function as coordinator during his free exercise of his religion." (*Id.* ¶ 36.) Specific examples of Defendants' alleged conduct discriminating against Sirleaf based on his disability are enumerated above.

Sirleaf also states that Defendant "Engelke came to a meeting of the minds with two or more of his co-conspirators to target, discriminate, retaliate, violate and actually deprive Sirleaf the Priest (and the House of Yahveh) of their rights secured under [the Religious Land Use and Institutionalized Persons Act], and the First, Ninth, and Fourteenth Amendments . . . by failing to comply with O.P. 803.1," which sets forth VDOC's policies and procedures for reasonably accommodating inmates with disabilities. (*Id.* ¶ 26; *see* ECF No. 14–1, at 1.) Sirleaf claims that Defendants conspired "to target, discriminate, retaliate, violate, and did violate," Sirleaf's rights "by amending, adopting, and enforcing O.P. 841.3 in a retaliatory and discriminatory manner meant to persecute Sirleaf the Priest and the House of Yahveh for petitioning the government for a redress of grievances." (Compl. ¶ 37.)

**B.     Sirleaf Brings Seven Claims Based on Defendants' Allegedly Discriminatory Conduct**

Based on the foregoing allegations, the Court construes Sirleaf to raise the following claims for relief:

Claim One:     Defendants[7] "engag[ed] in a conspiracy to deprive and the actual deprivation of" Sirleaf's rights under the Americans with Disabilities Act ("ADA").[8]  (Compl. ¶ 88.)

Claim Two:     Defendants "intentionally and deliberately depriv[ed] [Sirleaf] of [his] rights secured under the First Amendment."[9]  (Id. ¶ 94.)

Claim Three:  Defendants "engage[d] in a campaign of harassment in retaliation against Sirleaf the Priest (and the House of Yahveh) for his . . . petitioning the Government for a redress of [his] grievances against these Defendants," which violated his "rights secured under the First Amendment."  (Id. ¶ 96.)

Claim Four:    Defendants "engag[ed] in a conspiracy to violate [Sirleaf's] rights secured under" the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[10]  (Id. ¶ 97.)

Claim Five:    Defendants "intentional[ly] and deliberate[ly]" deprived Sirleaf of his right to the free exercise of religion in violation of (a) the First

---

[7] As noted herein, Sirleaf's Complaint is rambling, repetitive, and conclusory, and as such, it is hardly a model of clarity.  Therefore, although Sirleaf attempts to separately name Defendants in some of his claims, because not all of Sirleaf's claims nor the facts alleged in Sirleaf's Complaint are attributed to specific Defendants, the Court construes Sirleaf to raise each of his claims against all Defendants.

[8] 42 U.S.C. § 12101 *et seq.*

[9] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. CONST. AMEND. I.

[10] 42 U.S.C. § 2000cc–1(a).

Amendment and (b) the Ninth[11] and Fourteenth[12] Amendments. (*Id.* ¶ 106.)

Claim Six: Defendants conspired to violate Sirleaf's civil rights under the First Amendment, Ninth Amendment, Fourteenth Amendment, and RLUIPA by implementing a "conspiratorial plan/policy" in violation of 42 U.S.C. §§ 1985(3) and 1986.[13] (*Id.* ¶¶ 97, 108–09, 117.)

---

[11] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. AMEND. IX.

[12] "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1.

[13] Title 42 U.S.C. § 1985(3) provides, in pertinent part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Title 42 U.S.C. § 1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next

Claim Seven: Defendants "engaged in a conspiracy to violate [Sirleaf's] right of freedom of access to the courts of the United States arising under the Treaty of Friendship, Commerce, and Navigation between the United States and Liberia." (*Id.* ¶ 126.)

Sirleaf demands monetary damages, as well as injunctive and declaratory relief. (*See, e.g., id.* at 48–52.)

### III. Analysis

Defendants argue that Claims One, Two, Three, Five (a) and (b), Six, and Seven should be dismissed for failure to state claim upon which relief may be granted. (Mem. Supp. Mot. Dismiss 4–19, ECF No. 23.) Defendants do not move to dismiss Claim Four. For the reasons that follow, the Court will dismiss without prejudice Claims One, Two, Six, and Seven. The Court will dismiss with prejudice Claim Five (b). The action will proceed on Claims Three, Four, and Five (a).

### A.     The Court Will Dismiss Sirleaf's ADA Claim Without Prejudice (Claim One)

The Court will dismiss without prejudice Claim One because Sirleaf does not allege facts regarding how Defendants violated his rights based on his disability.

In Claim One, Sirleaf contends that Defendants violated his rights under the ADA by limiting his rights to practice his religion because of his disability.[14] (Compl. ¶ 88.) Title II of

---

of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.

[14] In Claim One, Sirleaf also vaguely references "equal protection" and "42 U.S.C. §§ 1983 [and] 1985(3)." (Compl. ¶ 88.) However, in Claim One, Sirleaf fails to provide any supporting facts or further explanation regarding any violations of his rights under the Equal Protection Clause and "42 U.S.C. §§ 1983 [and] 1985(3)." (*Id.*) Therefore, any such vague and conclusory claims under the Equal Protection Clause and "42 U.S.C. §§ 1983 [and] 1985(3)" are insufficient to state a claim upon which relief may be granted and are subject to dismissal without prejudice.

the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (quoting 42 U.S.C. § 12132). "Furthermore, it is now settled that the ADA applies to state prisons and correctional facilities." *Scott v. Kelly*, 107 F. Supp. 2d 706, 710 (E.D. Va. 2000) (citation omitted), *aff'd sub nom. Scott v. Moore*, 6 F. App'x 187 (4th Cir. 2001); *see Pa. Dep't of Corr. V. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." (citations omitted)).

> To state a claim under the ADA, a plaintiff must allege facts plausibly asserting that:
>
> (1) [he or] she has a disability, (2) [he or] she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [he or] she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his or] her disability.

*Constantine*, 411 F.3d at 498 (citations omitted). "A plaintiff is 'qualified' if [he or] she is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)).

Here, Sirleaf contends that the Defendants refused to accommodate his disability in his position as a religious coordinator as an act of retaliation. Sirleaf alleges that he filed lawsuits and grievances against Defendants, and that after he filed these lawsuits and grievances, Defendants "conspired to, and did, deprive Sirleaf the Priest and the House of Yahveh religious

program of their civil rights . . . so that Sirleaf the Priest . . . would be punished for petitioning the government for a redress of [his] grievances." (*Id.* ¶ 43.) In his Complaint, Sirleaf details a number of actions that Defendants took against him, which he contends were part of a conspiracy to retaliate against him,[15] (*see, e.g., id.* ¶ 44), including "conspir[ing] to retaliate against [him] . . . [by] discriminating against the stewardship of Sirleaf the Priest as a coordinator, who qualifies, and has a record of being disabled," and refusing to provide Sirleaf "with the reasonable accommodations, necessary and requested, for his essential function as coordinator during his free exercise of his religion." (*Id.* ¶ 36.)

Further, Sirleaf generally alleges that Defendants failed to "reasonably accommodate [him] with the assistance he needed as a disabled coordinator [for] . . . the House of Yahveh." (Compl. ¶ 20; *see id.* ¶¶ 25, 36, 46, 50.) For instance, Sirleaf states, "the Defendants refused to provide the disabled House of Yahveh coordinator, Sirleaf the Priest, or said religious program with musical instruments for communal worship while providing musical instruments for the communal worship of the European 'Kiaros' religious program." (*Id.* ¶ 52.)

Defendants argue that the Court should dismiss Claim One because "Sirleaf fails to submit any facts besides the bare allegations in his Complaint that he was discriminated against or excluded from participation in/denied benefits of a service on the basis of a claimed disability." (Mem. Supp. Mot. Dismiss 5.) Defendants aver that Sirleaf fails "to allege that he has a disability under the ADA" because he only "cites to Exhibit 4 of his Complaint as evidence of his disability," but provides "no further explanation of what this means." (*Id.*) Defendants

---

[15] The other adverse actions that Sirleaf alleges Defendants took against him after he filed his lawsuits and grievances are discussed in the Court's analysis of Sirleaf's other claims. The Court addresses in Claim Three Sirleaf's allegations regarding Defendants' alleged retaliatory actions. The Court addresses in Claim Six Sirleaf's assertion that Defendants conspired against him.

also argue that even assuming that "Sirleaf has a disability as defined by the ADA, he has failed to demonstrate that he was denied reasonable accommodations because of his disability." (*Id.* 6.)

After reviewing Sirleaf's allegations, the Court concludes that Sirleaf has failed to state a claim upon which relief may be granted with respect to his ADA claim. The Court assumes without deciding that Sirleaf is disabled and that the ADA applies to him. Nevertheless, Sirleaf fails to plausibly allege facts regarding how Defendants violated his rights under the ADA because of his disability.

For example, although Sirleaf references his status as a "disabled coordinator" for the House of Yahveh and alleges that Defendants denied his requested "reasonable accommodations" to assist him in this role, Sirleaf fails to support his claim. Sirleaf neglects to plausibly allege any facts regarding: (i) what he had requested as "reasonable accommodations" for his disability; (ii) how Defendants excluded him from any benefit because of his disability; and, (iii) how any such exclusion or discrimination was based on his disability. *See Constantine*, 411 F.3d at 498 (citations omitted); *Scott*, 107 F. Supp. 2d at 711 (finding that inmate failed to state a claim under the ADA because the inmate did "not claim[] that he was subject to illegal discrimination because of his disability, but rather because he exercised his constitutional rights in petitioning the Department of Justice"); *see also Davis v. Va. Dep't of Corr.*, No. 1:16cv327 (CMH/TCB), 2017 WL 2927976, at *3 (E.D. Va. June 30, 2017) (finding that inmate failed to state an ADA claim when the inmate implied that "he was denied placement in isolation based on [prison] policies that [had] nothing to do with his disability").

As a result, Sirleaf has failed to allege sufficient facts to plausibly suggest that Defendants denied him reasonable accommodations because of his disability or that he faced any other discrimination based on his disability. As such, Sirleaf fails to state a claim upon which

relief may be granted under the ADA. Accordingly, the Motion to Dismiss will be GRANTED with respect to Claim One. Claim One will be DISMISSED WITHOUT PREJUDICE.

**B.     The Court Will Dismiss Sirleaf's First Amendment Claim Without Prejudice (Claim Two)**

The Court will dismiss without prejudice Claim Two because Sirleaf does not allege facts regarding how Defendants offended his First Amendment rights.

In Claim Two, Sirleaf contends that Defendants "intentionally and deliberately depriv[ed] [Sirleaf] of [his] rights secured under the First Amendment." (Compl. ¶ 94.) While Sirleaf quotes the First Amendment, he fails to reference any facts to support this claim. Moreover, Sirleaf provides no further explanation or argument regarding how Defendants violated his rights under the First Amendment. (*See id.*)

Defendants argue that dismissal of this claim is warranted because "[t]his [c]ount is so utterly devoid of factual matter that it cannot 'state a claim to relief that is plausible on its face.'" Defendants also claim that "[t]here is no factual content at all, let alone sufficient factual content to allow the Court to 'draw the reasonable inference' that the named Defendants are liable for anything." (Mem. Supp. Mot. Dismiss 7 (citations omitted).)

As noted above, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims not clearly raised on the face of the Complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Here, Sirleaf fails to provide any supporting

facts or explanation as to how Defendants violated his First Amendment rights in Claim Two. As such, in Claim Two, Sirleaf fails to state a claim upon which relief may be granted.[16]

Accordingly, for these reasons, the Motion to Dismiss will be GRANTED with respect to Claim Two. Claim Two will be DISMISSED WITHOUT PREJUDICE.

### C.  The Court Will Deny the Motion to Dismiss as to Sirleaf's Claim Alleging First Amendment Retaliation (Claim Three)

The Court will deny the Motion to Dismiss as to Claim Three and allow Sirleaf to proceed on that count.

In Claim Three, Sirleaf contends that Defendants "engage[d] in a campaign of harassment in retaliation against Sirleaf the Priest (and the House of Yahveh) for his . . . petitioning the Government for a redress of [his] grievances against these Defendants," which violated his "rights secured under the First Amendment." (Compl. ¶ 96.)

To state a claim for retaliation in violation of the First Amendment, a plaintiff "must allege that (1) [he or] she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [the plaintiff's] First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendants' conduct." *Constantine*, 411 F.3d at 499 (citation omitted).

Under the first element, the United States Court of Appeals for the Fourth Circuit has held that inmates engage in protected First Amendment activity when they write prison

---

[16] Moreover, the Court notes that in Claim Five (a), Sirleaf alleges that he was deprived of his right to the free exercise of religion in violation of the First Amendment. (Compl. ¶ 106.) Therefore, because Sirleaf provides no facts to support Claim Two, and any facts in support of this claim would be identical to those supporting Claim Five (a), Claim Two is subject to dismissal because it is duplicative of Claim Five (a). *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (stating that two identical claims against essentially the same parties should be dismissed); *Contra Adams v. Naphcare, Inc.*, 244 F.Supp.3d 546, 549 (E.D. Va. 2017) (stating that different causes of action with the same standard of proof for each claim should not be dismissed as duplicative).

grievances and file lawsuits, allowing them access to courts. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544–46 (4th Cir. 2017). With respect to the second element, the determination as to whether a defendant's actions "adversely affected [the plaintiff's] First Amendment rights," *Constantine*, 411 F.3d at 499 (citation omitted), is a fact-specific inquiry, which takes into account the actors involved and their relationships. *See Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). For the third element, causation, a plaintiff must allege facts sufficient to show a causal connection between the protected First Amendment activity and the alleged adverse action. *See Constantine*, 411 F.3d at 501. "In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity." *Id.* (citation omitted). However, "[k]nowledge alone . . . 'does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). To prove causation, there must also be circumstantial evidence, such as evidence that the retaliation took place within some "temporal proximity" of the protected activity, or direct evidence of a retaliatory motive. *Id.*; *see Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

Here, Sirleaf alleges that he filed lawsuits and grievances against Defendants. (*See, e.g.*, Comp. ¶¶ 9, 17, 24, 45.) Sirleaf contends that Defendants were aware of his lawsuits and grievances, and that after filing his complaints, Defendants "conspired to, and did, deprive Sirleaf the Priest and the House of Yahveh religious program of their civil rights secured under the First Amendment . . . via excluding [various] religious exercises from O.P. 841.3, so that Sirleaf the Priest . . . would be punished for petitioning the government for a redress of [his] grievances." (*Id.* ¶ 43.) Sirleaf also claims that Defendants conspired "to target, discriminate, retaliate, violate, and did violate," Sirleaf's rights "by amending, adopting, and enforcing

O.P. 841.3 in a retaliatory and discriminatory manner meant to persecute Sirleaf the Priest and the House of Yahveh for petitioning the government for a redress of grievances." (*Id.* ¶ 37.)

Sirleaf alleges several specific instances in which he experienced retaliation for filing lawsuits and grievances. For example, Sirleaf avers that Defendants interrupted the House of Yahveh's observation of religiously significant holidays. Sirleaf avers that "the House of Yahveh had been observing Hanukkah, Purim, Tish B'Av, and the Fast of Esther at GCC prior to 2015 – i.e., prior to Sirleaf the Priest's lawsuits against the Defendants." (*Id.* ¶ 42.) After his lawsuits, Sirleaf contends that Defendants did not allow him to observe religiously significant days, like the birth and death of Emperor Haile Selassie I. (*Id.* ¶ 44). Additionally, Sirleaf states that "this campaign of religious persecution placed such a substantial burden on both Sirleaf the Priest's religious exercises and on his stewardship as a coordinator . . . that many of the House of Yahveh religious program's members quit coming to . . . Sirleaf the Priest's stewardship, as well as the House of Yahveh's religious programs." (*Id.* ¶ 39.) Finally, Sirleaf alleges that he was "unlawfully removed from [the Common Fare] diet," and "that this was being done to [him] in retaliation for his having filed suit." (*Id.* ¶ 24.)

As alleged, Sirleaf satisfies the first element necessary to state a retaliation claim. Sirleaf states in his Complaint that he has filed lawsuits and grievances in the past. The filing of lawsuits and grievances constitutes protected First Amendment activity. *See Booker*, 855 F.3d at 544–46 (citation omitted). As a result, Sirleaf's actions satisfy the first element of a First Amendment retaliation claim.

As to the second element, a plaintiff "must show that the [prison official's] conduct resulted in something more than a '*de minimis* inconvenience' to [the plaintiff's] exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (citation omitted). Here, Sirleaf alleges that

Defendants prevented him from celebrating some of the House of Yahveh's holy days when they amended the relevant operating procedure. Sirleaf also claims that Defendants removed him from the religious Common Fare diet. At this stage, such allegations plausibly suggest that Defendants' actions resulted in "more than a '*de minimis* inconvenience' to [Sirleaf's] exercise of First Amendment rights." *Id.* (citation omitted). As a result, Sirleaf's contentions satisfy the second element of a retaliation claim.

As to the third element, Sirleaf has alleged sufficient facts to plausibly suggest that there was a causal relationship between Sirleaf's protected First Amendment Rights and Defendants' adverse actions against him. The temporal proximity of Defendants' actions adversely affecting Sirleaf's First Amendment rights and Sirleaf's lawsuits and grievances against them suggests a causal connection. Because of the temporal implication of causation, Sirleaf satisfies the third element for a retaliation claim. *See id.* at 501 (explaining that "temporal proximity" can "suggest a causal connection"). Therefore, the Motion to Dismiss will be DENIED with respect to Claim Three.

**D.** **Sirleaf May Proceed on His RLUIPA Claim (Claim Four)**

In Claim Four, Sirleaf contends that Defendants "engag[ed] in a conspiracy to violate [Sirleaf's] rights secured under" the Religious Land Use and Institutionalized Persons Act. (Compl. ¶ 97.) Defendants did not move to dismiss this claim. As a result, Sirleaf may proceed on Claim Four.

### E. The Court Will Dismiss Sirleaf's Ninth and Fourteenth Amendment Claims (Claim Five (b)); But Will Deny Defendants' Motion to Dismiss Sirleaf's Free Exercise of Religion Claim (Claim Five (a))

The Court will dismiss with prejudice Claim Five (b) but allow Sirleaf to proceed on Claim Five (a).

In Claim Five (a), Sirleaf contends that Defendants "intentional[ly] and deliberate[ly]" deprived Sirleaf of his right to the free exercise of religion in violation of the First Amendment. In Claim Five (b), Sirleaf contends that Defendants deprived Sirleaf of his right to the free exercise of religion in violation of the Ninth and Fourteenth Amendments. (Compl. ¶ 106.) Specifically, Sirleaf alleges that Defendants deprived him of his right to the free exercise of his religion with respect to: (i) his improper removal from the Common Fare diet and inability to receive Kosher meals; (ii) the amendment and enforcement of O.P. 841.3 and the corresponding calendar of religious events; (iii) his inability to use communal worship items for the House of Yahveh's religious programs; and, (iv) his inability to participate in the House of Yahveh's holy days. (*See generally* Compl. ¶¶ 1–87.) The Court first addresses Claim Five (b).

### 1. Free Exercise of Religion Under the Ninth and Fourteenth Amendments (Claim Five (b))

In Claim Five (b), Sirleaf alleges that Defendants "intentional[ly] and deliberate[ly]" deprived Sirleaf of his right to the free exercise of religion in violation of the Ninth and Fourteenth Amendments. (*Id.* ¶ 106.)

"With only 'a handful' of exceptions, [the Supreme Court] has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the states." *Timbs v. Indiana* 139 S. Ct. 682, 687 (2019) (citing *McDonald v. Chicago.* 561 U.S. 742, 754 (2010)). The Supreme Court has explained that one such exception to the doctrine of incorporation exists "where another provision of the

Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (some internal quotations omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. Because "[t]he Ninth Amendment is not an independent source of individual rights; rather, it provides a rule of construction," it cannot be invoked as an additional First Amendment protection. *See Jenkins v. Comm'r of Internal Revenue Serv.*, 483 F.3d 90, 92 (2d Cir. 2007) (citation omitted). Sirleaf brings his Ninth Amendment claim to protect the free exercise of his religion through the Fourteenth Amendment. Because the Ninth Amendment does not grant individual rights, his claim must fail. Accordingly, the Motion to Dismiss will be GRANTED with respect to Sirleaf's claims under the Ninth Amendment and Fourteenth Amendment, which are set forth in Claim Five (b). Claim Five (b) will be DISMISSED WITH PREJUDICE.

### 2. Free Exercise of Religion Under the First Amendment (Claim Five (a))

Because Sirleaf pleads sufficient facts to bring a free exercise claim under the First Amendment, the Court will allow Claim Five (a) to proceed.

In Claim Five (a), Sirleaf alleges that Defendants "intentional[ly] and deliberate[ly]" deprived Sirleaf of his right to the free exercise of religion in violation of the First Amendment. (Compl. ¶ 106.) To state a free exercise claim under the First Amendment, Sirleaf must allege facts that suggest that "(1) he holds a sincere belief that is religious in nature;" and, (2) that Defendants imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10CV1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing

*Hernandez v. Comm'r Internal Revenue*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (alteration in original) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)) (some internal quotation marks omitted).

Sirleaf must also allege that the restriction fails to further a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987). In assessing the reasonableness of a regulation or managerial decision, courts must consider the following four factors: (1) whether a "valid, rational connection [exists] between the prison regulation [or managerial decision] and the legitimate governmental interest put forward to justify it;" (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates;" (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and, (4) whether an "absence of ready alternatives" to the regulation or managerial decision in question exists. *Id.* at 89–90 (citations omitted) (internal quotation marks omitted); *see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350–52 (1987). In analyzing the *Turner* Factors, "[t]he burden . . . is not on the State to prove the validity of prison regulations [or managerial decisions] but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Shaw v. Murphy*, 532 U.S. 223, 232 (2001); *O'Lone*, 482 U.S. at 350; *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).

Defendants argue, *inter alia*, that the Court should dismiss Sirleaf's First Amendment claims because "[a]s to the unnamed communal worship items [Sirleaf] claims he was denied, . . . he has not alleged with any specificity what items related to his religion he was denied."

(Mem. Supp. Mot. Dismiss 13 (citation omitted)). Additionally, Defendants state that "the centralized Common Fare menu and VDOC's procedures concerning it further the compelling state interests of uniformity and cost-efficiency," (*id.* (citations omitted)). Finally, with respect to Sirleaf's "observance of his high holy days," Defendants note that "Sirleaf has 'the existence of alternative means of exercising his right'" by attending "Messianic Jewish religious programs." (*Id.* at 15 (citations omitted).)

In his Complaint, Sirleaf alleges sufficient facts to suggest that Defendants placed a burden on his freedom to practice his religion. First, at this stage of the proceedings, the Court assumes that Sirleaf's religious beliefs are sincere. While Sirleaf's allegations showing a substantial burden to his religious practice lack precision, he has alleged sufficient facts at this stage to plausibly suggest that Defendants imposed a substantial burden on his ability to practice his religion in violation of the First Amendment. For example, Sirleaf contends that his sincerely held religious beliefs were burdened when he was improperly removed from the Common Fare diet; when he was denied a Kosher diet; when OP 841.3 and the corresponding religious calendar were amended to exclude the House of Yahveh; when he was unable to use communal worship items; and when he was unable to participate in the House of Yahveh's holy days.

Under the First Amendment, an inmate "has a 'clearly established . . . right to a diet consistent with his . . . religious scruples,' including proper food during Ramadan" or other religious holidays. *Lovelace*, 472 F.3d at 199 (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)). Prison officials "violate[] this clearly established right if [they] intentionally and without sufficient justification den[y] an inmate a religiously mandated diet." *Id.* (citation omitted). Consequently, the denial of Sirleaf's requested diet consistent with his religious practice plausibly suggests a violation of his First Amendment rights.

Further, Sirleaf has alleged sufficient facts to suggest that he requested communal worship items to practice his religion (*see, e.g.*, Compl. ¶¶ 52–55), and that Defendants denied Sirleaf's requests. *See, e.g.*, *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (explaining that the "district court prematurely dismissed prisoner's free exercise claim where the complaint contained enough factual support 'to rationally and plausibly conclude that [the prisoner was] a sincere devotee of the Wiccan faith' and 'persistently asked prison administrators for permission to possess tarot cards in order to practice his religion,' which requests were denied" (quoting *Kay v. Bemis*, 500 F.3d 1214, 1220 (10th Cir. 2007)).

Moreover, drawing all reasonable inferences in Sirleaf's favor, he has alleged sufficient facts to satisfy the *Turner* factors. First, Sirleaf plausibly suggests that removing the restrictions imposed on him and the House of Yahveh would have a minimal impact on prison resources. Second, Sirleaf claims that there are "ready alternatives" because Sirleaf contends that these restrictions were imposed only on him and the House of Yahveh and that other religious groups are permitted to engage in the requested activities and holy days. *Turner*, 482 U.S. at 89–90; *Jehovah v. Clarke*, 798 F.3d 169, 178–79 (4th Cir. 2015) (concluding that inmate stated a First Amendment free exercise claim when, with respect to a ban on Communion wine, "exempting [the plaintiff] from the ban would have a minimal impact on prison resources" because "[w]ine [was] already permitted on the premises, and religious services [took] place in a controlled environment in which [the plaintiff] would be supervised," and "at least one of [the] alternatives [was] so 'obvious' and 'easy' to suggest that the ban [was] 'an exaggerated response'" (quoting *Turner*, 482 U.S. at 90)).

Thus, Sirleaf has alleged sufficient facts to plausibly suggest that Defendants imposed a substantial burden on the free exercise of his religion. Accordingly, the Motion to Dismiss will

be DENIED with respect to Sirleaf's First Amendment free exercise claim, which is set forth in Claim Five (a).

### F. The Court Will Dismiss Sirleaf's §§ 1985(3) and 1986 Claims for Conspiracy to Violate his Civil Rights Without Prejudice (Claim Six)

The Court will dismiss without prejudice Claim Six because Sirleaf does not allege facts regarding how Defendants conspired to violate his civil rights.

In Claim Six, Sirleaf contends that Defendants conspired to violate his civil rights under the First Amendment, Ninth Amendment, Fourteenth Amendment, and RLUIPA by implementing a "conspiratorial plan/policy" in violation of 42 U.S.C. §§ 1985(3) and 1986." (Compl. ¶¶ 97, 108–09, 117.) Claim Six fails as a matter of law because Sirleaf fails to plead sufficient facts to satisfy the elements of a § 1985(3) claim.

To state a claim under § 1985(3), a plaintiff must show the following:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

A plaintiff must also "show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* (alterations in original) (quoting *Simmons*, 47 F.3d at 1377). The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.* (quoting *Simmons*, 47 F.3d at 1377).

In the Complaint, Sirleaf does not allege sufficient facts to serve as a basis for a § 1985(3) claim. Here, Sirleaf alleges that Defendants conspired "to target, discriminate,

retaliate, violate, and did violate," Sirleaf's rights "by amending, adopting, and enforcing O.P. 841.3 in a retaliatory and discriminatory manner meant to persecute Sirleaf the Priest and the House of Yahveh for petitioning the government for a redress of grievances." (Compl. ¶ 37.) In support of this assertion, Sirleaf avers that Defendant Engelke "had a tacit as well as an explicit agreement via [Defendants] Clarke and Robinson's amending and approval of O.P. 841.3." (*Id.* ¶ 27.) Sirleaf also alleges that Defendants "further conspired to refuse, continue to refuse, and thereby deprive Sirleaf the Priest . . . of the very religious exercises [he] had petitioned the Government to redress their being denied in the first place." (*Id.* ¶ 44.) Further, Sirleaf contends that Defendant Engelke "conspired with two or more" unnamed "GCC defendants to unjustly remove Sirleaf the Priest from the Common Fare diet," (*id.* ¶ 23), and "that this was being done to Sirleaf the Priest in retaliation for his having filed suit." (*Id.* ¶ 24.) Finally, Sirleaf states that Defendant Engelke "came to a meeting of the minds with two or more of his co-conspirators" in his retaliatory actions toward Sirleaf. (*Id.* ¶ 26.)

First, Sirleaf's claim fails because he does not allege that Defendants were "motivated by a specific class-based, invidiously discriminatory animus," as required to satisfy the second element of a §1985(3) claim. *A Soc'y Without a Name*, 655 F.3d at 346 (quoting *Simmons*, 47 F.3d at 1376); (*see also* Compl. ¶¶ 1–87.) Case law from the Fourth Circuit establishes that "[Section] 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *C&H Co. v. Richardson*, 78 F. App'x 894, 902 (4th Cir. 2003) (alteration in original) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1160 (6th Cir. 1980)).

Here, Sirleaf does not allege that "any racial animus" or "some qualifying 'otherwise class-based' discrimination" "motivated the apparent unequal treatment." *Id.* (quoting *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000)). Although Sirleaf contends that Defendants' conspiratorial acts impacted his ability to freely exercise his religious beliefs, Sirleaf's conspiracy claim turns on alleged discrimination against him for filing prior lawsuits against Defendants. Critically, Sirleaf does not allege that "the complained-of discrimination resulted from [his] membership in any qualifying class." *Id.* (citation omitted); *cf. Roden v. Diah*, No. 7:07CV00252, 2008 WL 5334309, at *9 (W.D. Va. Dec. 19, 2008) ("[P]ro se plaintiffs do not constitute a class for whose members § 1985(3) provides a remedy." (quoting *Eitel v. Holland*, 787 F.2d 995, 1000 (5th Cir. 1986))), *aff'd*, 325 F. App'x 253 (4th Cir. 2009). Because Sirleaf does not plead any facts to show that Defendants' actions were motivated by a class-based discriminatory animus, he cannot satisfy all the elements required for a § 1985(3) claim.

Moreover, even if Sirleaf based his conspiracy claim on alleged discrimination grounded upon "a specific class-based, invidiously discriminatory animus," the conspiracy claim would fail. As noted above, "in the absence of concrete supporting facts," the Fourth Circuit has rejected conspiracy claims under § 1985(3) when "the purported conspiracy is alleged in a merely conclusory manner." *A Soc'y Without a Name*, 655 F.3d at 346 (quoting *Simmons*, 47 F.3d at 1377). Although Sirleaf states in a conclusory fashion that Defendants conspired against him, he fails to allege any specific facts describing how Defendants did so. (*See generally* Compl. ¶¶ 1–87.) Consequently, Sirleaf's § 1985(3) claim must fail because it lacks specific facts regarding the Defendants' conspiratorial behavior.

In addition to his § 1985(3) claim, Sirleaf alleges that Defendants' actions violated 42 U.S.C. § 1986. Sirleaf's § 1986 claim must also fail. Section 1986 "establishes liability for any

person who has prior knowledge of a § 1985 conspiracy and has the ability to prevent it, yet fails

to do so." *Christian v. United States*, No. 3:17CV535–HEH, 2017 WL 4484254, at *3 (E.D. Va.

Aug. 15, 2017). Therefore, "[a] cause of action based upon § 1986 is dependent upon the

existence of a claim under § 1985." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985).

Here, because Sirleaf has failed to state a claim under § 1985(3), his claim under § 1986

necessarily fails as well.

For these reasons Sirleaf fails to state a claim upon which relief may be granted for a

conspiratorial policy in violation of 42 U.S.C. §§ 1985(3) and 1986. Accordingly, the Motion to

Dismiss will be GRANTED with respect to Claim Six. Claim Six will be DISMISSED

WITHOUT PREJUDICE.

### G. The Court Will Dismiss Sirleaf's Claim of Denial of Access to Courts under the Treaty of Friendship, Commerce, and Navigation between the United States and Liberia Without Prejudice (Claim Seven)

The Court will dismiss without prejudice Claim Seven because Sirleaf fails to identify

any facts showing that Defendants interfered with Plaintiff's nonfrivolous, civil rights related

litigation.

Sirleaf contends that Defendants engaged in a "conspiracy to violate [Sirleaf's] right of

freedom of access to the courts of the United States arising under the Treaty of Friendship,

Commerce, and Navigation between the United States and Liberia."[17] (Compl. ¶ 126.) For

_____

[17] In Claim Seven, Sirleaf also contends that Defendants' actions violated 18 U.S.C. § 247. (Compl. ¶ 125.) However, 18 U.S.C. § 247 is a federal criminal statute that does not provide a private cause of action. 18 U.S.C. § 247; *Walthour v. Herron*, No. 10–01495, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010) (explaining that "18 U.S.C. § 247 does not provide a 'basis for Plaintiff to pursue claims of violation of his constitutional rights'" (quoting *Vega v. Daniels*, No. 07–1193, 2009 WL 80434, at *10 (E.D. Cal. Jan. 13, 2009))). In Claim Seven, Sirleaf also contends that Defendants violated 42 U.S.C. § 1985(3). For the same reasons discussed in the Court's analysis of Claim Six, Sirleaf fails to allege sufficient facts to plausibly state a conspiracy claim against Defendants under § 1985(3).

example, Sirleaf avers that "[t]he Treaty of Friendship, Commerce, and Navigation Between the United States and Liberia (54 Stat. 1739 T.S. No. 956 Nov. 21, 1939) states, *inter alia*: 'the Nationals of each nation shall enjoy freedom of access to the Courts of the other on conforming to local laws etc.'" (*Id.* ¶ 127.) Sirleaf argues that Defendants violated his rights under this treaty because they "engaged in a conspiracy to violate his right of freedom of access to the courts of the United States." (*Id.* ¶ 126.) Specifically, Sirleaf claims that Defendants conspired "to retaliate against [him] for exercising his right to petition the government for a redress of his grievances against these Defendants." [18] (*Id.* ¶ 129.)

To state a claim of denial of access to the courts, a plaintiff must identify with specificity an actual injury to nonfrivolous litigation. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Specifically, the plaintiff must allege sufficient facts to show that "his [or her] nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." *Jackson v. Wiley*, 352 F. Supp. 2d 666, 679–80 (E.D. Va. 2004) (citing *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996)).

Under the Treaty of Friendship, Commerce, and Navigation Between the United States and Liberia, Sirleaf's right to access the courts of the United States remains equivalent to the right to access the courts as guaranteed by the United States Constitution. Indeed, case law recognizes this right to access. "With respect to the United States treaty with Liberia, the treaty merely grants the citizens of each country 'freedom of access' to the courts of the other country," and "[t]he treaty stops well short of granting the nationals of both countries 'access to each country's courts on terms no less favorable than those applicable to nationals of the court's country.'" *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 72 (2d Cir. 2003)

---

[18] The Court notes that Sirleaf's claim regarding Defendants' alleged retaliatory action is addressed in the Court's analysis of Claim Three.

(quoting Treaty of Friendship, Commerce and Navigation, Liberia–U.S., art. I, Aug. 8, 1938, 54 Stat. 1739, 1740; *Farmanfarmaian v. Gulf Oil Corp.*, 588 F.2d 880, 882 (2d Cir. 1978)).

Accordingly, Sirleaf fails to identify how Defendants denied his access to the courts because he fails to identify any nonfrivolous, civil rights related litigation that Defendants allegedly impeded. Because Sirleaf fails to satisfy the elements for a claim for denial of freedom of access to the courts, Sirleaf fails to state a claim. Accordingly, the Motion to Dismiss will be GRANTED with respect to Claim Seven. Claim Seven will be DISMISSED WITHOUT PREJUDICE.

## IV. Non-Dispositive Motions

### A.    The Court Will Deny Sirleaf's Motion to Reassign

Sirleaf filed a Motion to Reassign, which the Court construes to be brought under 28 U.S.C. § 455.[19] (ECF No. 25.) In his Motion to Reassign, Sirleaf requests that the Clerk "reassign the above-entitled case to another United States District Judge in accordance with the Clerk's standard assignment procedure because the Judge in this case has been named as a defendant in another of Priest Momolu V.S. Sirleaf Jr.'s action(s) creating an obvious conflict."[20]

---

[19] The statute provides, in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned.
(b) He [or she] shall also disqualify himself [or herself] in the following circumstances:
   (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455.

[20] The Court recognizes that although Sirleaf has tried bringing suit against the undersigned in other actions, judges must not recuse themselves based upon "unsupported, irrational, or tenuous allegations." *United States v. Akel*, 610 F. App'x 875, 877 (11th Cir.

28

(*Id.* at 1 (citation omitted).)  The Court notes that Sirleaf does not name the undersigned as a Defendant in this action, and the undersigned has had no contact with Sirleaf other than through the judicial process and the rendering of judicial decisions in Sirleaf's cases.  Further, the Court harbors no bias against Sirleaf nor does Sirleaf demonstrate any circumstances where the impartiality of the undersigned might reasonably be questioned.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that unfavorable judicial rulings alone do not constitute bias).  Accordingly, Sirleaf's Motion to Reassign (ECF No. 25) will be DENIED.

### B. The Court Will Deny Defendants' Motion to Stay Discovery

Defendants filed a Motion to Stay Discovery.  (ECF No. 27.)  In their motion, Defendants request that the Court stay discovery "until the resolution of their motion to dismiss."  (ECF No. 28 at 2.)  The Court addresses Defendants' Motion to Dismiss in this Memorandum Opinion.  Therefore, Defendants' request to stay discovery "until the resolution of their motion to dismiss" is moot.  Accordingly, Defendants' Motion to Stay Discovery (ECF No. 27) will be DENIED.

### C. The Court Will Deny Sirleaf's Motion for Production of Documents and Motion to Stay

Sirleaf filed a Motion for Production of Documents and Motion to Stay.  (ECF No. 26.)  In his motion, Sirleaf requests that (i) the Court order counsel for Defendants "to produce the document called the 'Treaty of Friendship, Commerce, and Navigation Between the United States and Liberia' . . . for Sirleaf the Priest's inspection," (*id.* at 1); and, (ii) the Court "stay[] the proceedings until the Defendants, their counsel, or another responsible nonparty provides for the production of the document:  'The Treaty of Friendship, Commerce, and Navigation Between the United States and Liberia (54 Stat., T.S. No. 956, Nov. 21, 1939).'"  (*Id.* at 4.)

_____

2015); *see also United States v. Pryor*, 960 F.2d 1, 3 (1st Cir. 1992) (litigants cannot obtain "an automatic recusal . . . by the simple act of suing the judge").

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matters that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Simply because "requested information is discoverable under Rule 26[] does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(c)). Further, pursuant to Federal Rule of Civil Procedure 34, a party may request the production of documents and other items that are in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Here, Sirleaf requests that Defendants or their counsel produce a copy of "the Treaty of Friendship, Commerce, and Navigation Between the United States and Liberia." (ECF No. 26, at 1.) Sirleaf essentially asks Defendants' counsel to perform legal research on his behalf regarding a treaty between the United States and Liberia. The discovery rules do not entitle Sirleaf to demand that Defendants' counsel take such action on his behalf. *See, e.g., El-Massri v. New Haven Corr. Ctr.*, No. 3:18–CV–1249 (CSH), 2019 WL 4942082, at *6 (D. Conn. Oct. 8, 2019) (explaining that a *pro se* plaintiff may not have defense counsel conduct the plaintiff's legal research under the guise of discovery (citations omitted)).

Furthermore, because Defendants are not required to perform legal research on Sirleaf's behalf and provide him with a copy of the above referenced treaty between the United States and Liberia, Sirleaf fails to demonstrate that proceedings in this action must be stayed pending

Defendants' production of this document. Accordingly, Sirleaf's Motion for Production of Documents and Motion to Stay (ECF No. 26) will be DENIED.

### V.  Conclusion

For the foregoing reasons, the Motion to Dismiss (ECF No. 22) will be GRANTED IN PART and DENIED IN PART.  Claims One, Two, Six, and Seven will be DISMISSED WITHOUT PREJUDICE.  Claim Five (b) will be DISMISSED WITH PREJUDICE.  All claims against Defendant Kinsley will be DISMISSED WITHOUT PREJUDICE.  The action will proceed on Claims Three, Four, and Five (a).  Sirleaf's Motion to Reassign (ECF No. 25) will be DENIED.  Defendants' Motion to Stay Discovery (ECF No. 27) will be DENIED.  Sirleaf's Motion for Production of Documents and Motion to Stay (ECF No. 26) will be DENIED.

Any party wishing to file a dispositive motion must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

_____
M. Hannah Lauck
United States District Judge

Date: MAR 1 6 2020
Richmond, Virginia