IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**PRIEST MOMOLU V.S. SIRLEAF, JR.,**

    Plaintiff,

v.                                       Civil Action No. **3:18CV311**

**HAROLD W. CLARKE,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Priest Momolu V.S. Sirleaf, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the motion for summary judgment filed by Defendants and various motions filed by Sirleaf. For the reasons articulated below, the Motion for Summary Judgment (ECF No. 47) will be GRANTED.

## I. Procedural History

The matter proceeds on Sirleaf's Particularized Complaint ("Complaint," ECF No. 14).[2] Sirleaf names as Defendants: Harold W. Clarke, Director, Virginia Department of Corrections ("VDOC"); David Robinson, Chief of Corrections Operations, VDOC; Eddie Pearson, Warden,

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, spacing, and spelling in the quotations from the parties' submissions.

Greensville Correctional Center ("GCC"); Cynthia Putney, Assistant Warden, GCC; Louise Goode, Assistant Warden, GCC; Mark Engelke, Director of Food Services, GCC; and, Chaplain Hollenbaugh, Chaplain, GCC, (collectively "Defendants"). By Memorandum Opinion and Order entered on March 16, 2020, the Court granted in part and denied in part Defendants' Motion to Dismiss. *See Sirleaf v. Clarke*, No. 3:18CV311, 2020 WL 1269787, at *15 (E.D. Va. Mar. 16, 2020).

The following claims remain before the Court:

Claim Three:  Defendants "engage[d] in a campaign of harassment in retaliation against Sirleaf the Priest (and the House of Yahveh) for his . . . petitioning the Government for a redress of [his] grievances against these Defendants," which violated his "rights secured under the First Amendment.[³]" (Compl. ¶ 96.) Specifically, Defendants:
> (a) removed Sirleaf from the Common Fare diet (*id.* ¶ 24); and,
> (b) prevented Sirleaf from observing his High Holy Day Feasts of Hanukkah and Purim and his fast days of Tish B'Av and Esther (*id.* ¶ 30).

Claim Four:  Defendants "engag[ed] in a conspiracy to violate [Sirleaf's] rights secured under" the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[⁴] (*Id.* ¶ 97.) Specifically, Defendants:
> (a) failed to provide Sirleaf a Kosher diet as required by his religion (*id.* ¶ 44);
> (b) prevented Sirleaf from observing his High Holy Day Feasts of Hanukkah and Purim and his fast days of Tish B'Av and Esther (*id.* ¶ 30); and,
> (c) failed to provide Sirleaf and House of Yahveh members "communal worship items," such as instruments and blankets and space "for their Havdallah Service – which is to be observed . . . " every Saturday night (*id.* ¶¶ 50, 52, 54).

---

[³] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[⁴] 42 U.S.C. § 2000cc–1(a).

Claim Five:    Defendants "intentional[ly] and deliberate[ly]" deprived Sirleaf of his right to the free exercise of religion in violation of (a) the First Amendment.[5] (*Id.* ¶ 106.) Specifically, Defendants:

(1) failed to provide Sirleaf a Kosher diet as required by his religion (*id.* ¶ 44);

(2) prevented Sirleaf from observing his High Holy Day Feasts of Hanukkah and Purim and his fast days of Tish B'Av and Esther (*id.* ¶ 30); and,

(3) failed to provide Sirleaf and House of Yahveh members "communal worship items," such as instruments and blankets and blankets and space "for their Havdallah Service – which is to be observed . . . " every Saturday night (*id* ¶¶ 50, 52, 54).

*Sirleaf*, 2020 WL 1269787, at *5. The Court dismissed all claims against Defendant Kinsley.[6] *Id.*

For the reasons explained below, Claim Three (a) will be dismissed because it is unexhausted and barred by the statute of limitations, Claim Three (b) will be dismissed for lack of merit, and Sirleaf's remaining claims will be dismissed because Sirleaf fails to demonstrate that Defendants substantially burdened his religious exercise.

### II.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[5] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I

[6] In Sirleaf's original Complaint, he named D.Y. Kinsley as a Defendant. (*See, e.g.*, ECF No. 1, at 1.) However, in the instant Complaint, Sirleaf states: "Please Note!: Mrs. D.Y. Kinsley is no longer a Defendant in this action." (Compl. 2.)

(1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Defendants submitted, *inter alia*: the Affidavit of Louise Goode ("Goode Affidavit," ECF No. 48–2); the Affidavit of W. Hollenbaugh ("Hollenbaugh Affidavit," ECF No. 48–3); the Affidavit of Mark Engelke, ("Engelke Affidavit," ECF No. 48–4); the Affidavit of K. Phillips, the Grievance Coordinator at GCC ("Phillips Affidavit," ECF No. 48–5); the Affidavit of David Robinson ("Robinson Affidavit," ECF

No. 48–6); the Affidavit of Assistant Warden Cynthia Putney ("Putney Affidavit," ECF No. 48–

7); the Affidavit of Director Clarke ("Clarke Affidavit," ECF No. 48–8); and certain VDOC

operating procedures that the Court cites to by their CM/ECF docket number.

In response, Sirleaf submitted, *inter alia*, the following evidence: his own affidavit

("Sirleaf Affidavit," ECF No. 54), a declaration of his religious belief ("Sirleaf Declaration,"

ECF No. 51, at 20–22) and a host of other documents. (*See, e.g.*, ECF No. 53.) Sirleaf also

swore to the contents of his Complaint under penalty of perjury.

Nevertheless, the facts offered by a sworn declaration must also be in the form of

admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the sworn

declaration "must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*

Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans

v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

Sirleaf makes many statements that run afoul of these prohibitions. For example, Sirleaf makes

conclusory statements that the meals VDOC provided do "not provide the minimum daily

nutritional requirements, style, and preparation of foods required by my religion" (ECF No. 14–

3, at 3), or that the lack of some items has substantially burdened religion (*see id.* at 6).[7] Sirleaf,

---

[7] These statements appear in Sirleaf "Plaintiff's Affidavit of Statement of Facts," which he attached to his Complaint. (ECF No. 14–3.) At the top of that document, Sirleaf stated, "I Priest Momolu V.S. Sirleaf, Jr., after first being duly sworn, assert the following information and facts are true and accurate to the best of my knowledge and belief, except to those obtained from others, and for those, I also believe them to be true. (*Id.* at 1.) Such a statement fails to transform the statements in the Plaintiff's Affidavit of Statement of Facts into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3, *2 n. 5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x. 270, 274 (4th Cir. 2001))); *Walker*, 11 F. App'x at 274 (concluding that "verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment").

5

however, failed to provide specific facts to support these assertions. Sirleaf's "[a]iry generalities [and] conclusory assertions" of this ilk are insufficient "to stave off summary judgment." *McManus v. Wilson*, No. 3:13CV460–HEH, 2015 WL 3444864, at *6 (E.D. Va. May 28, 2015) (alterations in original) (quoting *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004)); *see Al-Azim v. Everett*, No. 3:14CV339, 2016 WL 4472964, at *5, *8 (E.D. Va. Aug. 23, 2016) (denying summary judgment where plaintiffs adduced specific evidence reflecting the Common Fare diet was contaminated by pork).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment.

### III.  Summary of Relevant Facts

#### A.  Facts Pertaining to Sirleaf and His Religious Beliefs

At all times relevant to this action, Sirleaf has been detained at GCC. (Compl ¶ 7.) Sirleaf is a priest and a cofounder of Yahvist sect called the Commonwealth of Israel. (*Id.* ¶ 5.) The House of Yahweh[8] is one of the Commonwealth of Israel's satellite congregations. (*Id.*)

According to Sirleaf, the major high holy days and fast days of House of Yahweh are: Hanukkah, Purim, Shavuot, Sukkot, Passover, Passover Period, Rosh Hashannah, the Birth and Coronation Days of the Emperor Hallie Selassie, Gediliah, Tish B'Av, Esther, and Yom Kippur. (*Id.* ¶ 13.) Sirleaf's faith also requires that he consume a Kosher diet. (*Id.* ¶ 18.)

#### B.  Sirleaf's Prior Lawsuit

On or about, August 31, 2017, Sirleaf filed a 42 U.S.C. § 1983 action in this Court alleging that a number of VDOC officials, including Defendants Clarke, Pearson, and Robinson,

---

[8] The parties employ different spellings for Sirleaf's religious sect. (*See, e.g.*, Robinson Aff. ¶ 5, "House of Yahweh;" Compl. ¶ 5, "House of Yahveh.") The Court uses "House of Yahweh" when reviewing Sirleaf's claims.

retaliated against him for exercising his First Amendment rights. (Compl. ¶ 9.) On June 14, 2018, the Court dismissed the action without prejudice because Sirleaf failed to comply with the directives of the Court and submit an appropriate particularized complaint. *Sirleaf v. United States*, No. 3:17CV539–HEH, 2018 WL 8950572, at *1 (E.D. Va. Sept. 24, 2018). The defendants named in the 2017 action were never served.

### C. Facts Related to Observations of Religious Holidays for VDOC Inmates

VDOC Operating Procedure 841.3, Offender Religious Programs, establishes protocols to provide reasonable opportunities for inmates to pursue religious beliefs and practices subject to concerns regarding space, security, and resources. (Robinson Aff. ¶ 7.) "[L]evels of offender participation and availability of facility resources and religious leaders do not permit separate services for every possible form of worship at every facility." (*Id.* ¶ 8.) Specifically, limitations on staff and resources "does not allow for group observance of every possible holy day at every facility." (Clarke Aff. ¶ 8.) "The Master Religious Calendar lists the holy day observances for each religion recognized by VDOC." (*Id.*) The Master Religious Calendar attempts "to allow the greatest access and offender participation possible." (*Id.*) With input from staff, Defendant Robinson formulates the Master Religious Calendar. (Goode Aff. ¶ 5; Robinson Aff. ¶¶ 8, 9.)

Prior to 2016, House of Yahweh offenders were able to observe as a group the following eight holy days: Fast of Esther, Purim, Passover, Shavuot, Rosh Hashanah, Yom Kippur, Sukkoth, and Chanukah. (ECF No. 14–2, at 1–3.) Between 2013 and 2015, the Master Religious Calendar did not list Tish B'Av, the Birth of Hailee Selassie, or the death of Hailee Selassie as religious holy days for Yahwists. (*Id.*) In 2016, the VDOC Chaplain "found that there was no evidence to support" that the House of Yahweh observed Chanukah, Purim, or the

Fast of Esther. (Robinson Aff. ¶ 9.) Accordingly, Defendant Robinson removed the House of Yahweh from the Master Religious Calendar as observing these three holidays. (*Id.*)

In 2016, Sirleaf filed a grievance regarding his inability to observe the fast day of Tish B'Av and pursued it through all levels of appeal. (Phillips Aff. ¶¶ 13–15.) At that time, Sirleaf did not pursue a grievance regarding the removal of Chanukah, Purim, or the Fast of Esther from the Master Religious Calendar for the House of Yahweh. (*Id.* ¶ 11.) However, in February 2018, Sirleaf filed a grievance regarding the removal of these three holy days from the Master Religious Calendar. (Goode Aff. ¶ 4.)

### D. **The Common Fare Diet**

"The Common Fare diet was designed specifically to meet the dietary needs of offenders who, for religious reasons, require a Kosher, non-pork diet, and whose dietary requirement cannot be accommodated with foods provided by the Master Menu." (Engelke Aff. ¶ 4.) "The Common Fare menu has been analyzed and certified as meeting or exceeding the minimum daily nutritional requirements, including providing 2,500 or more calories a day." (*Id.* ¶ 5.)

On January 25, 2015, Sirleaf was removed from the Common Fare diet because he failed to pick up the required number of trays.[9] (Goode Aff. ¶ 9.) Sirleaf was eligible to reapply for the Common Fare diet in July of 2015. (*Id.*) Sirleaf, however, did not reapply until May 30, 2019, nearly four years later. (*Id.*) On June 17, 2019, Sirleaf was approved for the Common Fare diet. (*Id.*)

Sirleaf "did not grieve his allegation that he was incorrectly removed from [the] Common Fare [diet] in January of 2015 or that anyone removed him as an act of retaliation." (Phillips Aff. ¶ 16.)

---

[9] At that time, offenders participating in the Common Fare diet "were required to pick up seventy-five percent of their meals per month from the Common Fare menu." (Goode Aff. ¶ 9.)

### E. Communal Religious Items and Services

"If Offender Sirleaf wanted a specific religious communal item to be made available for use during his religious services, he would have needed to inform the Institutional Chaplain so that the Chaplain could make a request for the specific item to one of their **[sic]** subcontractors, a faith-based organization, and/or another community group." (Goode Aff. ¶ 8.) Chaplain Hollenbaugh did not receive any written request from Sirleaf for the use of a particular communal worship item. (Hollenbaugh Aff. ¶ 6.)

Chaplain Hollenbaugh swears that he never denied Sirleaf "an opportunity to meet with his religious group and . . . never denied him any communal items for his religious services." (*Id.* ¶ 5.) Chaplain Hollenbaugh notes that House of Yahweh ceased meeting around June of 2017:

> due to not having enough members to conduct services. Per VDOC policy at the time Sirleaf filed his lawsuit, a group must have consisted of at least five people. At present, a group must consist of a minimum of two persons. Records reflect that the House of Yahweh did resume their meetings in July of 2019 with Offender Sirleaf in attendance of these meetings.

(*Id.* ¶ 7.)

Other evidence in the record reflects that Sirleaf was temporarily "removed from services due to low/no participation." (ECF No. 53–2, at 34.) Specifically, no members of the House of Yahweh showed for programs "on November 24, 2018, December 4, 2018, December 11, 2018, December 18, 2018, January 15, 2019, January 8, 2019 and January 29, 2019. [Sirleaf] and one other offender . . . showed up on one occasion." (*Id.*)

### IV. Analysis

In evaluating Sirleaf's claims, the Court will first address Claim Three (a), which is subject to dismissal for procedural reasons. Analysis of Claim Three (b) turns, in part, on

whether Defendants substantially burdened the exercise of Sirleaf's religion in failing to allow communal worship for certain holy days. Therefore, the Court will address the substantive religious claims pertaining to these holy days in Claims Four (c) and Five (a)(3), before addressing the related retaliation claim in Claim Three (b).

## A. **Claim Three (a) Is Unexhausted and Barred by the Statute of Limitations**

### 1. **Exhaustion**

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires *proper* exhaustion." *Id.* at 93 (emphasis added). The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Sirleaf failed to exhaust his administrative remedies with respect to his removal from the Common Fare diet. Accordingly, Claim Three (a) contending that Defendant removed Sirleaf from the Common Fare diet in retaliation for petitioning the government is subject to dismissal for lack of exhaustion.

### 2. Statute of Limitations

Because there is no explicit statute of limitations for 42 U.S.C. § 1983 actions, courts borrow the personal injury statute of limitations from the relevant state. *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code Ann. § 8.01–243(A). Hence, Sirleaf was required to have filed his Complaint within two years from when the underlying claim accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, *United States v. Kubrick*, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." *Almond v. Sisk*, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting *Nasim*, 64 F.3d at 955).

Sirleaf's claim pertaining to his removal from the Common Fare diet accrued on January 25, 2015, when he was removed from the Common Fare diet. Therefore, he was required to file the present action by January 25, 2017. Because Sirleaf did not file this action until April 2018 (ECF No. 1–1), Claim Three (a) also is barred by the statute of limitations. Accordingly, Claim Three (a) will be DISMISSED.

## B. **Religious Land Use and Institutionalized Persons Act**

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person--
> **(1)** is in furtherance of a compelling governmental interest; and
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).  When applying this standard, the Court must determine: (1) whether the activity constitutes a religious exercise; and if so, (2) whether the burden placed on the activity is substantial. *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry).  Thus, to begin, Sirleaf must demonstrate that Defendants' actions imposed a "substantial burden" on the exercise of his religion.

### 1. **Whether the Burdened Activities Are a Religious Exercise**

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012) (quoting 42 U.S.C. § 2000cc–5(7)(A)).[10]  Given RLUIPA's broad definition of religious exercise, the Court will assume that the activities at issue here constitute a religious exercise. *See, e.g.*, *Whitehouse v. Johnson*, No. 1:10CV1175 (CMH/JFA), 2011 WL 5843622, at *3 (E.D. Va. Nov. 18, 2011) (assuming inmate's enrollment in seminary course constituted religious exercise for purposes of RLUIPA).

---

[10] "RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 U.S. at 360–61, (internal quotation marks and citations omitted).

12

## 2. Whether Sirleaf Demonstrates a Substantial Burden on His Religious Exercise

RLUIPA does not define the term "substantial burden." *See Couch*, 679 F.3d at 200.

The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's

jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. *See*

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Thus, the Fourth Circuit has explained that a

substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to
> violate his beliefs, or one that forces a person to choose between following the
> precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand,
> and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace*, 472 F.3d

at 187). To meet the substantial burden component of the test, the plaintiff "is not required . . . to

prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v.*

*Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725

n.13 (2005)). "[A]t a minimum," however, "the substantial burden test requires that a RLUIPA

plaintiff demonstrate that the government's denial of a particular religious item or observance

was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255,

1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227

(11th Cir. 2004));[11] *see Krieger*, 496 F. App'x at 326 (affirming grant of summary judgment

where inmate failed to "show that the deprivation of an outdoor worship circle and the requested

sacred items modified his behavior and violated his religious beliefs." (citing *Lovelace*, 472 F.3d

at 187)). Thus, no substantial burden occurs if the government action merely makes the

"religious exercise more expensive or difficult," but fails to pressure the adherent to violate his

---

[11] In *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), the Supreme Court abrogated *Smith*'s
ultimate holding that RLUIPA allows for monetary damages against state officials acting in their
official capacity.

or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007). "Once the inmate makes the requisite initial showing, the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest." *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) (citations omitted).

*Couch* and *Krieger*, two decisions issued by the Fourth Circuit, illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In *Couch*, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." 679 F.3d at 200. The VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." *Id.* at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. *Id.* at 200–01 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).

In *Krieger*, the Fourth Circuit declined to find that an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and certain 'sacred items' related to his religious practice of Asatru." 496 F. App'x at 322–23. The inmate-plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '*best* performed outdoors.'" *Id.* at 325 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to

14

offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." *Id.*

*Krieger* illuminates another consideration in conducting the substantial burden inquiry: the availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. *See id.*; *see also Al–Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the 'Blot' ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden." *Shabazz v. Va. Dep't Corr.*, 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing *Krieger*, 496 F. App'x at 326; *Coleman v. Governor of Mich.*, 413 F. App'x 866, 875–76 (6th Cir. 2011)). Applying these principles, the United States Court of Appeals for the Eighth Circuit concluded that an inmate failed to demonstrate that the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed the inmate to study in his cell. *Van Wyhe v. Reisch*, 581 F.3d 639, 656–57 (8th Cir. 2009). Similarly, the United States Court of Appeals for the Sixth Circuit has concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs." *Coleman*, 413 F. App'x at 876.

### 3. Kosher Diet

Sirleaf contends that his religion requires that he eat a Kosher diet. The undisputed evidence before the Court shows that the Common Fare diet is Kosher and that Sirleaf currently

is receiving that diet. Accordingly, Sirleaf fails to demonstrate that Defendants have substantially burdened his desire to eat a Kosher diet.[12] Claim Four (a) will be DISMISSED.

### 4. Holy Days and Fast Days

In Claim Four (b), Sirleaf contends that Defendants substantially burdened his religious exercise by removing from the Master Religious Calendar recognized religious holidays for the House of Yahweh (the holy day Feasts of Hanukkah and Purim and his fast days of Tish B'Av and Esther). Sirleaf, however, fails to explain the nature of these religious holidays, much less how the failure to include these days in the Master Religious Calendar substantially burdened his religion.[13] *See Krieger*, 496 F. App'x at 326 (concluding inmate's "blanket assertion" "that the sacred items were 'necessary' to perform 'well-established rituals'" was insufficient to establish a substantial burden when inmate failed to "identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs"); *see also DeSimone v. Bartow*, 355 F. App'x 44, 46 (7th Cir. 2009) (rejecting inmate's attempt to demonstrate a substantial burden on his religious exercise and "noting the insufficiency of a plaintiff's 'unreasoned say-so' to create a triable issue" (quoting *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006))). Sirleaf remained free to observe each of these holy days independently. Additionally, the record shows that membership in the House of Yahweh had declined, so

---

[12] Sirleaf's lack of Kosher diet prior to June 17, 2019 flowed not from Defendants' action, but from his own failure to reapply for the Common Fare diet prior to May 30, 2019. *See Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir.) (citations omitted) (reiterating that RLUIPA has a causation requirement and emphasizing "that the burden in question must have been imposed by the defendants and not 'self-imposed' by the plaintiffs themselves"), *cert. denied*, 140 S. Ct. 165 (2019).

[13] Sirleaf asserts that on the High Holy Feast Days his religion requires that he eat lamb, goat, or beef. (ECF No. 14-3, at 2, 4.) Defendants note that to the extent that these items are not available on the Common Fare diet on the day of his feast, Sirleaf remains free to purchase these items from the commissary.

communal celebration may not have been possible.  Thus, Sirleaf fails to demonstrate that Defendants' refusal to include these holidays on the Master Religious Calendar substantially pressured him "to modify his behavior and to violate his beliefs." *Couch*, 679 F.3d at 200 (quoting *Lovelace*, 472 F.3d at 187)); *see Coleman*, 413 F. App'x at 875–76.  Accordingly, Claim Four (b) will be DISMISSED.

### 5.  Religious Materials and Space for Havdallah Service

In Claim Four (c), Sirleaf complains, in part, that Defendants failed to provide him and the House of Yahweh with space to conduct Havdallah services.  Sirleaf provides contradictory information as to whether this service is to be conducted every Saturday night (Compl ¶ 54) or every Friday at sundown (ECF No. 14–3, at 5).  Nevertheless, Sirleaf fails to direct the Court to specific evidence showing the period of time he and other members of the House of Yahweh wished to conduct Havdallah service and Defendants denied their ability to do.  Indeed, Sirleaf "provided no direct evidence to show that other inmates [wanted] to join his [Havdallah service]." *Wright*, 921 F.3d at 419 ("[I]f other inmates would not join in his gatherings, then the prison's restrictive policies would not be a factual cause of the burden he claims to have experienced."); *Lee v. Johnson*, 793 F. Supp. 2d 798, 807–08 (W.D. Va. 2011) (concluding that five-inmate rule did not impose a substantial burden because the difficulty in holding group meetings for the House of Yahweh "is engendered by his co-religionists' hesitation to request group gathering from [prison] officials").  Accordingly, Sirleaf fails to demonstrate that Defendants substantially burdened his religious exercise by failing to set aside a separate space for Sirleaf and his coreligionists to conduct group Havdallah services.

In another portion of Claim Four (c), Sirleaf contends that Defendants denied him "musical instruments, blankets, and prayer rugs" for use during religious services. (ECF No. 14-3, at 5.) As with many of his other requests, Sirleaf fails to demonstrate, as he must, how the failure to provide these "items had an impact on the rituals and violated his beliefs." *Krieger*, 496 F. App'x at 326. While these items might have enhanced the House of Yahweh's religious services, Sirleaf fails to demonstrate that the failure to provide these items imposed a substantial burden upon his religious exercise. *Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 789200, at *11 (E.D. Va. Feb. 24, 2015) (citations omitted) ("Shabazz fails to adequately articulate the religious significance of wearing a bow tie during 'religious services' such that the lack of a bow tie places a substantial burden of his religious exercise."). The record also indicates that Sirleaf's lack of access to these items is attributable to his own failure to submit a proper request to Chaplain Hollenbaugh for the same. *Wright*, 921 F.3d 419. Because Sirleaf fails to demonstrate Defendants substantially burdened his religious exercise, Claim Four (c) will be DISMISSED.

## C.  Free Exercise

Similar to RLUIPA, in order for Sirleaf to survive summary judgment for his First Amendment claim, Sirleaf must demonstrate that Defendants' conduct substantially burdens his religious exercise. *Whitehouse v. Johnson*, 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *5. (E.D. Va. Nov. 18, 2011). "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." *Id.* at *5 (citing *Lovelace*, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe*, 581 F.3d at 657–58 (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). As

18

explained above, Sirleaf fails to demonstrate a substantial burden on his religious exercise with respect to the allegations in Claims Five (a)(1) through Five (a)(3). Claims Five (a)(1), Five (a)(2), and Five (a)(3) will be DISMISSED.

### D. Retaliation

In order to survive summary judgment for his First Amendment retaliation claim, Sirleaf must produce evidence demonstrating that: (1) he engaged in protected First Amendment activity; (2) Defendants took some action that adversely affected his First Amendment rights; and, (3) there was a causal relationship between his protected activity and Defendants' conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). Here, Defendants do not dispute that Sirleaf's filing of lawsuits and grievances constitute protected First Amendment activity. (ECF No. 48, at 13.) With respect to Claim Three (b), Defendants dispute that any causal relationship existed between Sirleaf's filing of grievances and lawsuits and the failure to include the High Holy Day Feasts of Hanukkah and Purim and his fast days of Tish B'Av and Esther on the Master Religious Calendar for the House of Yahweh.

To establish the third element of a First Amendment retaliation claim, Sirleaf must show that his protected conduct was a "substantial or motivating factor" in Defendant Robinson's decision not to include the feast days of Hanukkah and Purim and the fast days of Tish B'Av and Esther on the Master Religious Calendar for the House of Yahweh.[14] *Haendel v. Va. Dep't of Corr.*, No. 7:18–CV–00289, 2020 WL 7018564, at *9 n.12 (W.D. Va. Nov. 30, 2020) (citing

---

[14] The undisputed evidence reflects that Defendant Robinson was the individual who removed these holy days from the Master Religious Calendar. Sirleaf fails to direct the Court to any admissible evidence that suggest other Defendants had a role in removing these holy days or fast days from the Master Religious Calendar. Sirleaf also fails to direct the Court to admissible evidence that suggests Defendant Robinson was aware of Sirleaf's other grievances, much less that the filing those grievances motivated Defendant Robinson's conduct.

*Martin* v. *Duffy*, 977 F.3d 294, 300 (4th Cir. 2020)).  Absent direct evidence of a link, plaintiffs seeking to establish such a causal link "must at least show (1) that the defendant had knowledge of the plaintiff's protected conduct, and (2) that there was temporal proximity between the protected conduct and the adverse action." *Id.* (citing *Constantine*, 411 F.3d at 501).

Sirleaf contends that Robinson removed these days from the Master Religious Calendar in retaliation for Sirleaf filing a lawsuit in 2017, *Sirleaf v. United States*, No. 3:17CV539–HEH (E.D. Va.).  As noted above, Robinson was never served with a copy of this lawsuit.  Moreover, the holy days of which Sirleaf complains were excluded from the Master Religious Calendar for the House of Yahweh *prior* to Sirleaf having filed the 2017 action.  Between 2013 and 2015, the Master Religious Calendar did not list Tish B'Av as a religious holy day for Yahwists.  (ECF No. 14–2, at 1–3.)  In 2016, after the VDOC Chaplain noted the absence of evidence to support that the House of Yahweh observed Chanukah, Purim, or the Fast of Esther, Defendant Robinson removed the House of Yahweh from the Master Religious Calendar for observing these three holidays.  The House of Yahweh remained on the Master Religious Calendar for five other holy days.  Sirleaf has failed to demonstrate his filing of *Sirleaf v. United States*, No. 3:17CV539–HEH (E.D. Va.) or any other lawsuit or grievance was a factor, much less a substantial or motivating factor, in the exclusion of the above-listed holy days in the Master Religious Calendar for the House of Yahweh.[15]  *Haendel*, 2020 WL 7018564, at *9 n.12 (citing *Martin*, 977 F.3d at 300).  Accordingly, Claim Three (b) will be DISMISSED.

---

[15] As noted above *Sirleaf v. United States*, No. 3:17CV539–HEH (E.D. Va.), was filed *after* Defendant Robinson had removed Chanukah, Purim, and the Fast of Esther from the Master Religious Calendar.  Thus, the filing of that action could not have motivated him to remove these holidays from the Master Religious Calendar for the House of Yahweh.

## V.  Conclusion

Sirleaf fails to demonstrate entitlement to relief from the Court on the somewhat rambling allegations in his Omnibus Motion (ECF No. 51), Request for Admissions (ECF No. 36), Motion to Strike (ECF No. 55), and Motion to Have Opposing Counsel Pay the Costs of Plaintiff Having to Prove His Request for Admissions (ECF No. 57).  Accordingly, Sirleaf's request for relief in these Motions (ECF Nos. 36, 51, 55, 57) will be DENIED.[16]  Additionally, the Court notes that Sirleaf has three strikes under 28 U.S.C. § 1915(g) and is precluded from proceeding *in forma pauperis* on any appeal from this matter.  *See Sirleaf v. Northam*, No. 3:19CV182, 2019 WL 4247824, at *5 (E.D. Va. Sept. 6, 2019) (notifying Sirleaf that he has three strikes under 28 U.S.C. § 1915(g)).

Sirleaf's claims will be DISMISSED.  The Motion for Summary Judgment (ECF No. 47) will be GRANTED.  The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

M. Hannah Lauck
United States District Judge

Date: March 9, 2021
Richmond, Virginia

---

[16] The Court acknowledges that summary judgment should be denied when "outstanding discovery requests on material issues exist." *Goodman v. Diggs*, --- F.3d ----, No. 18–7315, 2021 WL 280518, at *5 (4th Cir. Jan. 28, 2021) (quoting *Raynor v. Pugh*, 817 F.3d 123, 130 n.5 (4th Cir. 2016)).  That does not appear to be the case here.  Sirleaf has had many months to conduct discovery.  Sirleaf has not opposed summary judgment on the ground that he needs additional time to conduct discovery.  Moreover, as reflected above, the majority of the grounds on which the Court granted summary judgment are based on Sirleaf's failure to adduce evidence to reflect that his religious exercise was substantially burdened.  Sirleaf, rather than Defendants, is the individual best situated to produce this evidence.

21